```
 1            IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA
 2                    Richmond Division.

 3

 4

 5        United States of America,

 6                             plaintiff,

 7          versus                    3:10 CR 151

 8        Faye W. Kriete,

 9                             defendant

10

11

12

13            before:  Honorable Robert E. Payne
             Senior United States District Court Judge
14

15

16                    October 1, 2010
                      Richmond, Virginia
17

18

19               GILBERT F. HALASZ RMR
                 Official Court Reporter
20                 U. S. Courthouse
                 701 East Broad Street
21               Richmond, VA 23219
                   (804) 916-2248
22                  APPEARANCES

23

24

25
```

```
1                    MICHAEL C. Moore, ESQ.,

2              ASSISTANT UNITED STATES ATTORNEY

3                  FOR THE UNITED STATES

4

5              CHRISTOPHER COLLINS, ESQ.

6                  FOR THE DEFENDANT

7                   THE DEFENDANT

8                 IN HER OWN BEHALF

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       THE CLERK:  Case number 3:10 CR 151.

2       The United States of America versus Faye W.

3   Kriete.

4       United States is represented by Michael Moore.

5       The defendant is represented by Christopher

6   Collins.

7       Are counsel ready to proceed?

8       MR. MOORE:  United States is ready.

9       MR. COLLINS:  Mrs. Kriete is ready, Judge.

10      THE COURT:  All right, sir.  Excuse me.

11      MR. MOORE:  Your Honor, Ms Kriete is before The

12  Court for her sentencing following her June 10

13  guilty plea to a criminal information charging her

14  with bank fraud in violation of title 18 United

15  States Code section 1344.  The maximum penalty for

16  that offense is 30 years of imprisonment, five year

17  period of supervised release, and a one million

18  dollar fine, and a hundred dollar special

19  assessment.

20      The advisory guideline range as calculated by

21  the probation office is four to ten months and the

22  defendant falls into zone B of the guideline table.

23  There are no objections to the presentence report.

24  The government is also aware that a victim in this

25  matter, Neal Kriete, has filed with The Court a

```
 1    victim impact statement claiming various alleged
 2    items of restitution.  The government's position,
 3    having reviewed title 18 United States Code section
 4    3663 (a), the mandatory victim restitution act, is
 5    those items are not recoverable as restitution in
 6    this case:  I am also advised Mr. Kriete is here
 7    represented by counsel, and he wishes to exercise
 8    his right to allocate under title 18 United States
 9    Code section 3771 (a) 4.
10         THE COURT:  All right.  Stand up, Ms Kriete.
11    Have you read the presentence report?
12         THE DEFENDANT:  Yes, I have, Your Honor.
13         THE COURT:  Have you been over it with your
14    lawyer?
15         THE DEFENDANT:  Yes, I have.
16         THE COURT:  And are there any objections to it?
17         THE DEFENDANT:  No, Your Honor.
18         THE COURT:  All right.  You may be seated.
19         MR. COLLINS:  Judge, that is sort of an iffy
20    no.
21         THE COURT:  What?
22         MR. COLLINS:  Sort of an iffy no she gave you
23    on my behalf.  I did not file an objection to the
24    victim impact statement because I don't think I can.
25    I think The Court is --
```

1          THE COURT:  No, you can't.  The victim is

2     entitled to.

3          MR. COLLINS:  We would dispute some of the

4     rantings contained in it.  I was --

5          THE COURT:  Well, that is not part of the

6     presentence report.

7          MR. COLLINS:  I understand.

8          THE COURT:  There are no objections to the

9     prior?

10          MR. COLLINS:  Not to the presentence report, of

11     course.  Thank you, Judge.

12          THE COURT:  All right.

13          The presentence report is hereby accepted,

14     adopted, filed as tendered.  It will be placed in

15     the record.  It will be under seal.  Well, I guess

16     it is attached to the presentence report, isn't it?

17          MR. COLLINS:  It is now.  When I first got it

18     it was not.

19          THE COURT:  Is it part of the presentence

20     report or not?

21          PROBATION OFFICER:  Submitted as part of the

22     presentence report, Your Honor.

23          THE COURT:  All right.

24          Well, except for the statement, impact

25     statement of Neal Richard Kriete, insofar as the

1    relief that is requested is concerned, the

2    presentence report will be accepted, adopted, filed

3    as tendered.  The Court will review the presentence

4    report.  I mean has reviewed the impact statement.

5    But there is nothing I can do about what is

6    contained in there now.

7         MR. COLLINS:  Thank you.

8         THE COURT:  That is a matter for other

9    litigation, I believe.  I can't figure out how under

10   the law that would be recoverable as restitution in

11   this case.  That does not mean that he may not have

12   a civil action against her for actions.  All right.

13        Well, do you have any evidence other than

14   Mr. Kriete's statement?

15        MR. MOORE:  I do not, Your Honor.

16        THE COURT:  All right.

17        Does Mr. Kriete wish to testify?  I have the

18   impact statement, and I have read it.

19        Is Mr. Kriete here?

20        MR. KREITE:  Yes, sir.

21        THE COURT:  Do you want him to testify?

22        MR. KREITE:  Yes, sir.

23        MR. MOORE:  He is going to allocute.

24        THE COURT:  Well, you can speak on your own

25   behalf.  You don't have to be sworn.

1      MR. KREITE:  Your Honor, as a result of the

2   crime that was committed against me that we are

3   dealing today, it destroyed my credit rating.  I

4   have been denied two loans.  I have to use my

5   retirement savings to pay attorneys and legal fees.

6   I have had to sell assets that I didn't really want

7   to sell to prevent a home from going into

8   foreclosure, and a second mortgage to keep both of

9   these current until the home was sold.

10      And after the sale of the house, with the

11   current housing market like it is, a substantial

12   loss on the sale of the property.  My retirement

13   savings is now gone.  I have $25,000 in legal

14   expenses, and I have lost just about everything I

15   have worked for my entire life.

16      There is much more that I could say, but I want

17   to try to limit it to the main things that -- the

18   main topics of the impact that this has caused me.

19      The emotional stress and strain that I have

20   lived under for the last three and a half years is

21   just mind boggling.  I am seeing a psychiatrist.  I

22   have talked to numerous attorneys.  And you I have

23   been pursuing justice now for three and a half years

24   in this matter.

25      It is much more complicated than this one

1   charge.  I do plan on pursuing other charges

2   whenever I can get an investigation.  I would like

3   to ask The Court to grant me that investigation.

4       THE COURT:  I can't really order an

5   investigation.

6       MR. KREITE:  I have five other felonies that

7   need to be investigated.

8       THE COURT:  My suggestion is you present all

9   you have to the --

10       What agency is investigating this crime,

11   Mr. Moore?

12       MR. MOORE:  Your Honor, the Hanover County

13   Sheriff's Department has been involved with most of

14   the other collateral matters that Mr. Kriete

15   references.

16       THE COURT:  Well, you submit your claim, you

17   direct it to the Federal Bureau of Investigation and

18   to the United States Attorney for the Eastern

19   District of Virginia, and to the state authorities

20   and they have the power to investigate.  And they

21   can do, or bring charges.  The Court doesn't have

22   the power to do that, and can't bring charges on its

23   own right.

24       MR. KREITE:  I understand, Your Honor.

25       THE COURT:  I do understand exactly what you

1   are saying.

2       MR. KREITE:  Your Honor, I have not been able

3   to get the investigation that I have asked for.  I

4   have presented the evidence.  I have a folder full

5   of evidence.  There was an arrest made in March of

6   2008 in Hanover County for check larceny.  And that

7   was quickly dismissed.  I have a folder full of bad

8   checks, some written to the mortgage company, some

9   of them written to the second mortgage company, some

10  of them written to the credit --

11      THE COURT:  Bad checks or what?

12      MR. KREITE:  Worthless checks written on a

13  closed or frozen account as payment on the first and

14  second mortgage, as well as the credit card issue

15  that we are dealing with today.  There was two bad

16  checks written to Chase Manhattan Bank.  I have

17  copies of all of this information.  I also --

18      THE COURT:  Well, did they come after you to

19  collect on the check?

20      MR. KREITE:  Yes, sir.  I am having to deal

21  with Chase Manhattan on my own.  They are not

22  willing to press charges, apparently, or do not care

23  to get involved in this case, but they should be.

24      THE COURT:  I am going to recommend that the

25  United States Attorney, Mr. McBride, take a look at

1    this case.  This is an egregious fraud.  It is a

2    terrible situation.  And just from what I see, there

3    appear to be more crimes involved here than is

4    reflected in this particular case.

5         MR. KREITE:  Yes, sir.

6         THE COURT:  Mr. Moore, you take this case and

7    you take -- you go talk to Mr. McBride about it,

8    because there is a whole lot more here than you all

9    have brought.

10        MR. KREITE:  Yes, sir.

11        THE COURT:  I believe that is true.  I don't

12    know all of the evidence.  I am just saying that

13    there is a whole lot from his evidence.  What he

14    presented, there is a whole lot more here than just

15    this case.  I don't know what the other factors are.

16    I don't have a full investigation, so I can't make a

17    judgment as to whether or not there is any charges

18    to be brought in this situation.  I can't do

19    anything with respect to the state.  But I will tell

20    you if I were you I would go to the Commonwealth's

21    Attorney.  I would go to my representative.  And I

22    would go pursue this to the hilt.

23        THE DEFENDANT:  Your Honor.

24        THE COURT:  And we would get to see how to sue

25    her civilly.  And if you have criminal or credit

1  issues that are created by her, I would go see a law

2  firm that specializes in credit law, such as

3  Mr. Bennett.  I think he is called Consumer

4  Litigation Associates.  And tell them what the

5  situation is.  And he can help you deal with the

6  credit card companies and with the other people.

7      I think you have been mightily wronged, but the

8  place to redress the wrongs is not in this case,

9  unfortunately.  But I understand your situation.

10      MR. KREITE:  After three and a half years of

11  pursuing justice, and trying to get this

12  investigation that I still need, I have not been

13  able to get that from the jurisdictions where the

14  crimes were committed.  I have been ignored.  I have

15  been refused.  I have been violated.  My phone calls

16  have not been returned.  And I have been had

17  absolutely no response from the sheriff's department

18  in the jurisdiction, which is Hanover County.

19      THE COURT:  Go to the Commonwealth's Attorney.

20      MR. KREITE:  I have already been there.  He

21  told me this crime we are dealing with today was a

22  civil matter, and he was not going to deal with it.

23  The --

24      THE COURT:  It clearly is a criminal matter.

25      MR. KREITE:  Postal inspectors concluded his

1    investigation.  And found identify theft, number

2    one; credit card fraud, number two; and a postal

3    crime has been committed as well, which is why I now

4    have no recourse against the credit card company.

5    The crime was not reported within 30 days, is what I

6    have been told.  And they have no liability now for

7    that reason.  That is due to the postal crime that

8    was committed where the billing statements were

9    transferred out of my hands.

10        THE COURT:  Do you have proof they found that

11   crime?

12        MR. KREITE:  Yes, sir.

13        THE COURT:  No, I mean proof they found that it

14   was a crime, postal fraud?

15        MR. KREITE:  That is what I was told by

16   Mr. O'Donnell.  His investigation turned up three

17   counts of crime, not one.  He took it to the Hanover

18   Commonwealth's Attorney for prosecution.  He tried

19   to get the charges reduced.  And when Mr. O'Donnell

20   refused to do that, he refused to prosecute the

21   case.  I told him he was wasting his time going to

22   Hanover, but he said he had to go there first

23   because that is the jurisdiction where the crimes

24   were committed.  He told me he was now going to the

25   U.S. Attorney, which he did.  And he got a

1  prosecution on one count, not three.  Identity

2  theft, credit card fraud, and postal fraud.  That is

3  why the U.S. Postal Inspection Service is involved.

4  And I commend them for a job well done.

5      THE COURT:  All right.

6      Anything else, sir?

7      MR. KREITE:  Well, there is a lot more, Your

8  Honor, but I guess we will have to deal with the

9  rest of it at another time in another court.  But I

10  need a police investigation of the rest of this

11  case.

12      THE COURT:  All right.

13      MR. KREITE:  Thank you.

14      THE COURT:  Thank you.

15      MR. MOORE:  Your Honor, we will continue to

16  communicate with the local authorities, and I will

17  bring your concerns --

18      THE COURT:  I am rather astounded by what I

19  have read, and what hasn't happened in Hanover

20  County.  I don't know who is assessing what in the

21  way of the law out there, but it is truly bizarre if

22  what he says is true about the facts, and in what he

23  says the response is.  I don't know if that is true.

24  But this -- she is a one-woman crime spree is what

25  she is.  That is exactly what her situation is.  And

1    the damage that she has caused him is enormous.

2         I will tell you that I am giving notice now

3    that I am considering a sentence above the advisory

4    guidelines, a variant sentence, and it will be a

5    significant sentence.  If you would like more time

6    to prepare and explain why either one of you don't

7    think that is appropriate, or do think it is

8    appropriate, I will be glad to give you time to

9    prepare.  And we will continue the sentencing.  You

10   all can brief the issue.  It will be a significant,

11   sentence perhaps in the neighborhood of five years

12   in prison is warranted.

13        MR. COLLINS:  Judge, I would certainly like

14   more time, and like to call witnesses.

15        THE COURT:  Okay.  You can.

16        MR. COLLINS:  Mr. Kriete is right, they are not

17   prosecuting because they don't believe half of what

18   he says.

19        THE COURT:  I am just talking about what she

20   did here, what can be proved.

21        MR. COLLINS:  Well, I don't know that anything

22   is proven by what he says.

23        THE COURT:  Talking about what she did in here.

24        MR. COLLINS:  All of those bills are proved

25   during a pretty acrimonious divorce.  Not her fault

1   that she is divorced.  They are getting divorced.

2   This is a guy who had a protective order put against

3   him because he put a snake in her car.  His

4   credibility with the police is less than zero.  The

5   last time he sent them out to her they apologized to

6   her.

7       THE COURT:  Well, the police found, postal

8   inspector found several charges, according to him, I

9   don't know whether he did or he didn't.

10      MR. COLLINS:  Concerning this particular event,

11  there could have been several charges brought, and

12  we worked it out to one charge.

13      THE COURT:  You did, but you don't have a deal

14  on the sentence.

15      MR. COLLINS:  Correct.

16      THE COURT:  Just what I see here in this case

17  is unbelievable.

18      MR. COLLINS:  I think it is if The Court takes

19  that at face value.

20      THE COURT:  I take the statement as facts at

21  face value, and the plea agreement at face value.

22      MR. COLLINS:  You can do that.

23      THE COURT:  I am entitled to do that.  I can't

24  decide whether what he says is true or not.  What I

25  said about what is going on means that he should go

1    get some recourse somewhere else and have it looked

2    into.  And maybe he -- I am sure, as in every

3    divorce, there is more than one person involved.

4    And there is more than one person who is at fault.

5    That is inevitable.  But this is, it looks to me

6    like this is a very substantial fraud that she

7    committed here.  It is very deliberate.  And very

8    extensive.  I don't think ten months is an

9    appropriate sentence in the case.

10        MR. COLLINS:  Well, I would like --

11        THE COURT:  It could be more.  Whether five

12   years or two years, or one year, I don't know.  But

13   I believe it needs to be more.  I am considering an

14   upward variance.  I don't know how much I would

15   impose.  I haven't -- I want to hear from all of you

16   on that.  So would you get my book, please?

17        I don't know what is going on behind the

18   scenes, but I can tell you this.  There is enough

19   there to warrant a look see.  And the mere fact that

20   during the course of an investigation he did, or a

21   divorce, did something that warranted a protective

22   order is no excuse for the commission of frauds.  If

23   the police think it is, then they are wrong.  What

24   they need to do is to look at the substance of the

25   fraud, not to look at and the evidence that relates

1    to that.  Not to decide because this guy acted like

2    a jerk on one occasion or two occasions that he

3    wasn't defrauded.  I don't know whether that is what

4    has happened or not.  That is what he says has

5    happened.  I don't know that.  But if it has

6    happened, it is not the way to run an operation and

7    look into something.  You have got to actively look

8    at the nature of the alleged offense.  And she

9    already has committed enough crime and confessed to

10   enough crime to leave a reasonable law enforcement

11   officer to believe that one ought to look into these

12   matters closely, and not be skewed by what happened

13   in a divorce.

14       MR. COLLINS:  I am not suggesting that the

15   police were skewed by what happened to the divorce.

16   I think they looked into everything and rejected it.

17       THE COURT:  Doesn't sound to me like they did.

18       MR. COLLINS:  Well --

19       THE COURT:  In fact, if what I just heard is

20   right, the federal authorities produced evidence of

21   a lot of crime.  That let -- and that the state

22   people wouldn't even look at it.  Somebody needs

23   to -- I don't know what is going on out there, but

24   that is not the way to run a railroad.  I don't know

25   what the answer to all this is.

1        How long do you want to file your papers on

2   whether a variant ought to be granted?  You can have

3   whatever reasonable time you like, and I will set it

4   on a schedule and re-schedule the sentencing, and

5   give the government a chance to file, too.

6        How long do you want to file, Mr. Collins?

7        MR. COLLINS:  At least 30 days, Judge.  Say

8   November 1st?

9        THE COURT:  All right.

10       MR. MOORE:  I can file a response within ten

11  days thereafter, Your Honor.

12       THE COURT:  All right.

13       You file your paper on November 1st.  You file

14  yours on November 10.  And both of you send copies

15  to Mr. Kriete.

16       MR. MOORE:  He is represented by counsel.

17       THE COURT:  You send them to his counsel then.

18       MR. MOORE:  Yes, Your Honor.  And then --

19       THE COURT:  I have a sentencing December 10 at

20  1:30.  Can we do that?

21       MR. COLLINS:  That is fine.

22       MR. MOORE:  That is fine, Your Honor.

23       THE COURT:  All right.

24       Thank you very much.

25       You all may be excused.

1       MR. COLLINS:  Thank you, Judge.

2

3       THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

4

5                 Gilbert Frank Halasz, RMR

6                  Official Court Reporter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          End end end end end end end end end end end end

2     end end end:

3          . . .

4                 IN THE UNITED STATES DISTRICT COURT

5                 FOR THE EASTERN DISTRICT OF VIRGINIA

6                          Richmond Division

7          K The United States of America, plaintiff.

8          Versus 3:09 CR 454-01.

9          Dwight an dry forward, defendant.

10                before:  Honorable Robert E. pain

11              senior United States District Court judge

12          October 1, 2010 sent S-PBT Richmond, Virginia

13                      GILBERT F. HALASZ RMR

14                      Official Court Reporter

15                      U. S. Courthouse

16                      701 East Broad Street

17                      Richmond, VA 23219

18                      (804) 916-2248

19      Appearanceses

20      CHARLES A. KWAUGLY AT TO, ESQ. ASSISTANT UNITED

21          STATES ATTORNEY FOR THE UNITED STATES

22      REGINALD M. BARELY, ESQ. FOR THE DEFENDANT.

23      THE DEFENDANT IN HIS OWN BEHALF:

24      THE CLERK:  CLERK.

25      MR. MOORE:  QUIGLEY AT TO.

1        MR. COLLINS:  BARELY.

2        THE COURT:  JUDGE.

3        THE COURT:  JUDGE.  DEFENDANT DIFFERENT THE

4    DEFENDANT.

5        MR. COLLINS:  APOLOGIZE I WAYS RIGHT THERE IN

6    THE CONFERENCE ROOM TPWHR*EF MY EYE AM STR-RS SENIOR

7    RE AFTER THERE MORNING, TOO.

8        THE COURT:  WELL YOU ARE ACTUALLY NOT DUE HERE

9    FOR INFORMATION COUPLE MINUTES.

10       MR. COLLINS:  Thank you sir.

11       THE COURT:  I was early.

12       THE CLERK:  Case number 3:09 CR 4545 United

13   States of America versus Dwight an dry Ford.  United

14   States is represented by Mr. PHAOEUG EL Moore and

15   Charles KWAUG he at to the defendant is represented

16   by Reginald barely.  Are counsel ready to proceed?

17       MR. MOORE:  We are Your Honor.

18       MR. COLLINS:  Defendant is, sir.

19       THE COURT:  All right -FRPLT.

20       MR. MOORE:  I am KWEUG he at to (.

21       MR. MOORE:  Good morning Your Honor, we are

22   here this morning for a review of the detention

23   order entered Eastern District of New York against

24   Mr. Forward.  The government would call KREUS hard

25   man, first.

1              KREUS HARD MAN

2        WAS SWORN AND TESTIFIED AS FOLLOWS:

3              DIRECT EXAMINATION

4  BY MR. MOORE:

5  Q    Could you please state your name for the

6  record?

7  A    Christopher hard man C. H. R. I. S. T. O. P. H.

8  E. R.  H. A. R. D. E. M. A. N.

9  Q    What do you do Mr. Hard man?

10  A    Special agent with the U. SUFPLT Secret Service

11  from Richmond field office.

12  Q    How long have you been with the Secret Service?

13  A    For 15 years.

14  Q    Are you the case agent assigned to this case?

15  A    Yes I am.

16  Q    How, have you reviewed the investigation

17  -FRPBLGT yes.

18  Q    What did your review of the investigation

19  reveal?

20  A    Revealed that on about January 15th, 2008 the

21  defendant Mr. Forward was arrested by the Colonial

22  Heights police department after leaving a target and

23  subsequently going to an AT&T phone store a traffic

24  stop made by the colonial height police department.

25  During which time they discovered roughly 80 access

1    TKE SRAOEUSDZ in his vehicle as well as ten I.

2    phones two play station 3 TKPWAPL systems, two play

3    station P. S. P. game systems.  After the discovery

4    of all these items.

5         THE COURT:  What is access device?

6         THE DEFENDANT:  Credit card.

7         THE COURT:  What was the ten what?

8         THE DEFENDANT:  Were ten play station sorry ten

9    new I phones.

10        THE COURT:  I phones all right go ahead.

11        THE DEFENDANT:  After the discovery of these

12   items let detectives from colonial HAEUTS police

13   department contacted the Richmond field office of

14   the Secret Service.

15   BY MR. MOORE:

16   Q    At the arrest did Mr. Forward make any

17   statements?

18   A    According to the case report from agent miles

19   who was the original case agent Mr. Forward did not

20   make any statements he asked to contact his uncle

21   prior to giving any statements to agent miles.

22   Q    Did he say anything about his purchasing of the

23   I phones?

24   A    I do not believe so, sir.

25   Q    Did he make reference to a Mr. Garcia?

1   A     I don't recall reading that in the case file.

2   Q     Okay?

3         THE COURT:  Well do you recall it?

4         MR. MOORE:  If I had something to refresh his

5   memory I would give it to him, Your Honor.

6         I mean I understand Mr. Forward said to Mr. PHA

7   HREUPB in a that he gave him the name Robert Garcia

8   to purchase the I. phones.

9         MR. COLLINS:  Judge.

10        THE COURT:  I said do you have any evidence?  I

11  due not give me one second.

12        THE COURT:  You asked bunch of questions and

13  HREP doesn't know what you are talk about.

14        MR. MOORE:  Yes.

15        THE COURT:  And I mean one of you hasn't done

16  your homework I don't know who it is somebody is not

17  or you shouldn't be asking these questions or

18  something.

19        MR. MOORE:  If I could find something to

20  refresh his memory, Your Honor.

21        THE COURT:  Do you know how to do this in the

22  future?

23        MR. MOORE:  Yes, Your Honor.

24        THE COURT:  Now you do it you write out your

25  question an then you have the immediately where it

1   is, at hand, if you need something to either impeach

2   a witness or to refresh his recollection.  You then

3   tab that and you indicate it by cross reference to

4   tab with a number or some code then wham when he

5   answers a question in the way you are not expecting

6   you get it out on hand it to him you don't have to

7   root around through a file.

8        MR. MOORE:  Yes, Your Honor I apologize.

9        THE COURT:  You just prepare for these case

10  just as well you do any other case.  I.e. the TKE

11  tension herring they need to be conducted with the

12  same dispatch E TPWEURB EPB se and fairness as all

13  other proceedings.

14       MR. MOORE:  Yes, Your Honor.

15  BY MR. MOORE:

16  Q    I believe I don't have that report, Your Honor?

17       THE COURT:  All right.

18  BY MR. MOORE:

19  Q    After the cards were pry TRAOEFD was TR any

20  further analysis done TOFT cards?

21  A    Wrist agent AL lien made man the cars through a

22  credit card reader.  And he determined that the gift

23  cards had been re encoded with credit card

24  information and on February 23rd of 2009.

25       THE COURT:  I don't understand.  You mentioned

1  gift cards cards up to now he had credit cards I

2  phones play stations and something KAULTD a P. S. P.

3  What is gift card got to do with anything?

4       THE DEFENDANT:  The access device cards that we

5  referred are were comprised of gift cards as well as

6  credit cards.

7       THE COURT:  TKPWEUFLT cards and credit cards.

8       THE DEFENDANT:  Yes, sir.

9       THE COURT:  Go ahead.

10 BY MR. MOORE:

11 Q    (By The Court) Sorry I TPHOEU understand?

12 BY MR. MOORE:

13 Q    The?

14 A    The February 23rd, 2009 examination by the

15 Secret Service forensic services division again, the

16 gift cards had been re encoded with credit card

17 information.

18 Q    What were those gift cards what do they look

19 like on the face?

20 A    I have not seen the gift cards yet sir.

21 Q    Have you looked at the report does it reflect

22 what the gift cards were?

23 A    I believe there were there was a PHAL Wal-Mart

24 gift card a far get gift card and several others.

25 Q    (target).

1    Q    Does in forward have any prior arrests?

2    A    Yes.

3    Q    We will return to his arrest I believe in

4    Douglas ville.  Georgia.  Can you tell us about let

5    circumstances surrounding that arrest?

6    A    That arrest occurred August 31 of 2007 and the

7    information reported by the Douglass ville, Georgia,

8    police department under case number 07-071-2753

9    revealed that the defendant was arrested on a

10   vehicle stop after leaving a toys are us driving a

11   Mercedes PWEPBS the officers discovered a traces of

12   marijuana within the vehicle.  As well as 41 gift

13   cards in Mr. Forward's position.

14   Q    Was Mr. Forward with anyone?

15   A    Yes he was with Georgia I can't early Jones and

16   TPE licks PHA HREUPB in a.

17   Q    Let's turn to the Hamilton New Jersey arrest of

18   December 9 of 2007.  Can you tell us about the

19   condition the events surrounding that arrest?

20   A    Mr. Forward again was arrested on a vehicle

21   stop he was accompanied by again TPE election PHA

22   HREUPB in a and Thomas Carol.  During the arrest

23   after leaving a far get and AT&T store they

24   discovered?  His vehicle again four I phones, 3 P.

25   S. P.es one I pod touch, as well as several gift

1    cards wrapped in a rubber band.

2    Q     After the indictment in this case did the

3    Secret Service contact Mr. Ford to tell him about

4    the indictment?

5    A     Yes, sir.

6    A     On January 13th, 2010 agent gag he a from the

7    New York field office was contacted by Mr. Ford at

8    which time agent gag he o advised Mr. Ford that

9    there was an arrest warrant issued for him and that

10   at that time Mr. Ford agreed to contact agent miles.

11   Q     To your knowledge did Mr. Ford ever contact

12   agent miles?

13   A     Mr. Ford never contacted agent miles.

14   Q     Returning back I guess to Mr. Forward's

15   criminal history, has Mr. Ford committed any

16   violation under court supervision or has he missed

17   any The Court dates?

18   A     Yes.

19   Q     Can you tell us what has been chat he committed

20   while under supervision?

21   A     I.

22   Q     I can be a little more?

23   A     His last arrest was the one occurring on

24   September 1st, 2010.  Which he was arrested in New

25   York with a during the search alluded 357 revolver

1   was found in the stolen vehicle he was driving.

2   Q    Talking about the arrest of September 1st,

3   2010; is that correct?

4   A    Yes.

5   Q    That took place in Brooklyn?

6   A    Yes.

7   Q    Okay?

8        THE COURT:  Was he driving or not?

9        THE DEFENDANT:  He was the driver of the

10  vehicle.  It was parked at the time.

11  BY MR. MOORE:

12  Q    Do you recall why he was pulled over?

13  A    The vehicle was do you believe parked.

14  Q    Okay.

15       How did they find the firearm?

16  A    The officer searched the vehicle.

17  Q    Okay.

18       I guess leading up to his arrest that brought

19  him to Virginia in New Jersey, in August of 2010,

20  August 21st can you tell us about the facts

21  surrounding that arrest?

22  A    Again the defendant, Mr. Ford, was driving a

23  lamb grow gee TPHRE.

24       THE COURT:  Where what date was this?

25       THE DEFENDANT:  This was August 21, 2010.

1          THE COURT:  Driving a lamb PWRO gee knee.

2          THE DEFENDANT:  Yes, sir, yes, Your Honor.

3          THE COURT:  Where was this?

4          THE DEFENDANT:  Lakewood township in New

5    Jersey.

6          THE COURT:  Okay.

7          THE DEFENDANT:  Arrested by New Jersey state

8    police when they observed him driving without a seat

9    belt.

10   Q    Did they find anything else after Mr. Ford was

11   pulled over?

12   A    There were five access device cards found in

13   the vehicle.

14   Q    Okay.  Does Mr. Ford have any family ties to

15   Richmond, Virginia?

16   A    That I would have to review the notes for, sir.

17   Q    Okay.  Is Mr. Ford employed?

18   A    To my knowledge he is unemployed.

19   Q    (By The Court) Do we know whose car that the lamb

20   PWRO gee knee was?

21   A    It was rented out of California.

22         THE COURT:  Rented where.

23         THE DEFENDANT:  Out of California.

24         THE COURT:  Who was the renter?

25         THE DEFENDANT:  I don't have that information,

1    Your Honor.

2    BY MR. MOORE:

3    Q    No further questions, Your Honor.

4                        CROSS EXAMINATION

5    BY MR. COLLINS:

6    Q    Agent hard man good morning sir?

7         THE COURT:  Good morning.

8    Q    Now, let's go back to January of 2008.  If we

9    could, please, sir in Colonial Heights.

10   A    Yes, sir.

11   Q    Now, Mr. Ford was not driving the vehicle that

12   was the subject of the traffic stop, was he?

13   A    He was not driving that vehicle.  That was PHA

14   HREUPB in a cyst TEUR's vehicle.

15   Q    Isn't it true also sir that all of the access

16   devices that you have referenced were found in the

17   back of the car, isn't that true, sir?

18   A    Aam TPHAOLT S sure.

19   Q    Check the notes to confirm that, please sir?

20   A    I am not sure of the location where the access

21   devices were found.

22   Q    Isn't it true, sir, that none of those were

23   items were found on the person of Mr. Ford?

24   A    I am not sure in that particular address in

25   that particular arrest.

1    Q     Sir isn't it also true that the I phones the

2    psi the play stations, and other physical items

3    which were found at the time of the stop of Mr. PHA

4    HREUPB in a were located in the trunk of the

5    vehicle?

6    A     No, sir I believe there is video evidence of

7    the defendant Mr. Ford in the stores in which those

8    items were purchased.

9    Q     My question to you was, where were those items

10   found in the motor vehicle?

11   A     Again I am not sure where those items were

12   discovered.

13   Q     Is the now true there is no evidence that the

14   items which were found in the motor vehicles were

15   purchased with the access devices that were located

16   in the car in which he was the passenger?

17   A     I don't have that information either.

18   Q     Sir, you all conducted an in department

19   analyses and you also fingerprinted the access

20   device and other items which were found in that

21   vehicle, didn't?

22   A     The access devices were fingerprinted were test

23   tested for fingerprints.

24   Q     None of the fingerprints that you all were able

25   to lift from those access cards matched those of

1    Mr. Ford?

2    A    According to the report they weren't able too

3    lift, to verify the prints taken from those cards.

4    Q    To the extent that fingerprints were lift none

5    of these were matched with Mr. Ford, were they?

6    A    Thanks, sir.

7    Q    If we could get back to Douglass ville,

8    TKPWARBGS on August of 2007.  All those matters have

9    been resolved have they not?

10    THE COURT:  What has been revolved?

11    Q    The arrest that he referenced from Douglass

12    ville, Georgia.  In 2007.

13    THE COURT:  I believe he was charged with a

14    traffic AUP fence wasn't he.

15    MR. COLLINS:  Yes, sir.

16    THE COURT:  Wasn't any charge on the credit

17    card?

18    MR. MOORE:  That's correct I just want to make

19    sure they will they were all railway solved since he

20    brought them up on direct KPAEUF.

21    THE COURT:  Well there wasn't any resolution of

22    the credit cards?

23    MR. MOORE:  No, sir that's correct.  Only

24    reference whatever he was charged with there.

25    THE COURT:  The charge okay I got you.

1        THE DEFENDANT:  The arrest were brought up

2   merely to determine more of a pattern STPHRAO.

3   Q    Well sir again Mr. PHA HREUPB in a and

4   Mr. Jones were with him, is that not correct?

5   A    That's correct.

6   Q    Okay.  Now, as far as your records go other

7   than not contacting agent PHAOEULTS down here in

8   extra, (miles) Mr. Ford did contact agent gag Leo

9   and cooperated with him in New York did he not?

10  A    He contacted him and indicated that he was

11  going to get in touch with agent miles the case

12  agent at the time and turned himself in subsequent

13  attempts by agent miles to contact defendant Ford

14  negative results.

15  Q    He anybody STHAEUTD everything up in New York,

16  is that that is not correct the contacting of the

17  Secret Service agent?

18  A    The contacting AOFT Secret Service agent was

19  based upon the Secret Service agent attempting to

20  contact Ford through relatives and different

21  associates in New York.

22  Q    My question is that he in turn did contact

23  agent KAG gee toly and AP kite RA other than

24  contacting the agent in Virginia?

25  A    After being pursued by agent gag Leo.

1    Q    If we could get back to the arrest that was

2    made of him in September of 2010.  Is it not true

3    sir that those charges in Brooklyn have been

4    dropped?

5    A    The charges on September first 2010?

6    Q    Yes, sir that I have been dropped haven't they?

7    A    I would have to defer to the counsel on that.

8    I am unsure whether that I have been dropped or not.

9        MR. MOORE:  Your Honor, I understand the

10   charges are still pending.  New York has a rule you

11   have to indict within 72 hours have taken custody of

12   the defendant and they did not indict but it its my

13   understanding that they are still the SKHARGS are

14   still pending still reviewing the indictment.

15   STKPWHRAO well as of this stage though their THOEUFB

16   dropped if they didn't charge him in 72 hours.

17   Correct?  This is the interested of September.

18       MR. MOORE:  He was released on bond.  They have

19   to as I said they have to indict within 72 hours.

20   They are still reviewing possible indictments.

21   BY MR. COLLINS:

22   Q    That is all I V. thank you.  Of this agent?

23       THE COURT:  All right.

24       MR. MOORE:

25                    REDIRECT EXAMINATION

1   BY MR. MOORE:

2   Q    I have no further questions and the government

3   rests on its evidence.

4        THE COURT:  What evidence did you present?

5        MR. MOORE:  Just the testimony of Mr. Hard man.

6        THE COURT:  Okay.

7        MR. COLLINS:  Judge at this stage I submit

8   there have not been any evidence to change the facts

9   or SEURBGSDZ that were before judge Lauck when

10  Mr. Ford appeared before judge Lauck in this case

11  and I ask The Court to reinstate those terms and

12  conditions of the order that was issued by judge

13  Lauck.

14       THE COURT:  All right.

15       MR. MOORE:  Your Honor we are here today on

16  review of magistrate judge in the Eastern District

17  of Virginia's order of release.  You stayed his

18  order pending this re STRAOU.  If you find there is

19  probable cause to believe the TKEUFTS committed a

20  federal state or HRORBG KAL crime while on release

21  or by a clearing and convincing evidence that the

22  defendant has violated any other condition of

23  release we can look towards the 342 G factors.

24       THE COURT:  Intent to be putting on here an

25  explanation of the strength of your case?

```
 1        MR. MOORE:  Your Honor, one of the 342 G.

 2   factors is weight of the evidence EUFRPBLTS what did

 3   you prove other than he has some credit cards with

 4   him?

 5        MR. MOORE:  There is, Your Honor, there is

 6   sufficient WHRAEUFT?

 7        THE COURT:  In the I heard was a bunch of I

 8   don't know and I don't have that information and I

 9   haven't done that and I haven't done this.

10        MR. MOORE:  Yes, Your Honor.

11        THE COURT:  He got arrested with all of test

12   TKE STREUSZ at various times.  What kind of evidence

13   is that?  That support the charge you are supposed

14   to show that you have got some kind of evidence to

15   support the charge against him.

16        MR. MOORE:  Your Honor,.

17        THE COURT:  Do you have fly I have had that he

18   used the credit card device?

19        MR. MOORE:  Yes, Your Honor.

20        THE COURT:  Did you PWRE sent it this morning?

21        MR. COLLINS:

22        MR. MOORE:  Only in summary.

23        THE COURT:  It was so summary I didn't

24   understand it.

25        MR. MOORE:  I understand, Your Honor.
```

1          THE COURT:  So how can I KHRUD that you have

2     got a case even?

3          MR. MOORE:  Your Honor, the indictment was --

4     the indictment is not under review it is -- there

5     is.

6          THE COURT:  That isn't the point.  One of the

7     factors on whether he is released it strength of

8     your case you have got a lose SER on a week case I

9     take that STPWO account and TK in deciding whether

10    it is appropriate to detain him and what you did is

11    come in here and HO human it.

12         MR. MOORE:  Yes, Your Honor.

13         THE COURT:  Yes you did.

14         THE COURT:  Why should I confine in man based

15    on your decision to come in here and do a little

16    song and dance routine that didn't prove anything

17    and that other than he had credit cards?

18         MR. MOORE:  If we go back to the AO original

19    conditions Mr. Ford failed to meet those conditions.

20    The WHRAEULT.

21         THE COURT:  We are not talking about that that

22    you canning about the weight of the evidence STPHRAO

23    Yes, Your Honor.  There would be -- if -- there is

24    ample evidence to suggest that Mr. Ford did commit

25    these crimes?

```
1        THE COURT:  What evidence do you have that is

2   ample?

3        THE COURT:  What the ample?

4        MR. MOORE:  Video of TPWRAEUPL photos of him in

5   the A. T. F. STOERLS in the tar TKWET STPOERS using

6   these gift cards.  I tried to keep the detention

7   brief or the agent.

8        THE COURT:  Kept it so brief you didn't do

9   anything.

10        THE COURT:  He didn't know any way he stayed I

11   understand there are videos apparently STHAPBT even

12   looked at them.

13        MR. MOORE:  That's correct.

14        THE COURT:  You ever somebody so busy they

15   can't get a case together for URS and understand

16   what it is?

17        MR. MOORE:  Your Honor.

18        MR. MOORE:  Your Honor he is new agent to the

19   case the investigating KAGT.

20        THE COURT:  Where is other investigating agent?

21        MR. MOORE:  I believe agent ago transferred to

22   Washington, D. C., Judge.

23        THE COURT:  How TPHAR is Washington from here?

24        MR. MOORE:  It is only 95 miles Your Honor.

25        THE COURT:  Get himself in a carnd get down
```

1   here don't you rely on somebody that doesn't know

2   anything about the case.

3       MR. MOORE:  Yes, Your Honor.

4       THE COURT:  What do you think this is?  We

5   don't just take I am not just going to take a -- the

6   word of somebody WHROP doesn't know anything.  As

7   evidencing that there is proof that he committed the

8   crime.

9       MR. MOORE:  I understand, Your Honor.  And at

10  trial the agent.

11      THE COURT:  Not talking about at trial I want

12  to you do it right.  You get the agent down here and

13  let's hear it right.  I am concerned about this

14  defendant.  And about releasing this defendant

15  because of a number of things.  What has happened

16  here it United States has come in herewith a STHREUP

17  shod operation to try to show that there is some

18  kind of case.  I couldn't even understand what the

19  case is based on what was told me this morning.

20      MR. MOORE:  Yes, Your Honor.

21      THE COURT:  I have got the indictment here so I

22  know that certainly you are bound to have some

23  evidence of what this is about.

24      MR. MOORE:  Yes, Your Honor EUFRPBLTS but the

25  didn't isn't the evidence here.

1          MR. MOORE:  Yes, Your Honor.

2          THE COURT:  Okay.

3          You tell the agent to be here can you been here

4     on Monday afternoon Mr. Barely?

5          MR. COLLINS:  No, sir I can tell you now not

6     Monday.

7          THE COURT:  Or Monday morning.

8          MR. COLLINS:  I have a hearing that is set and

9     has been set for couple months now in Henrico

10    circuit court during that morning judge I am going

11    to be in Henrico circuit court also I TPHOEU Monday

12    is out.

13         MR. COLLINS:  I can tell you that Wednesday is

14    going to be out, totally for me because I have been

15    attending aunt funeral North Carolina leaving late

16    either Tuesday evening or very early Wednesday

17    morning for that.

18         THE COURT:  How about Thursday?

19         MR. COLLINS:  I am available on the morning of

20    Thursday, yes, sir.

21         THE COURT:  Thursday morning at 10:00 o'clock.

22    I don't care what that agent is doing he is coming

23    here?

24         MR. MOORE:  Yes, Your Honor.

25         THE COURT:  Our your case I am not going to pay

1    fly attention to you.  Let me tell you something

2    when you bring a charge against somebody in this

3    court you better be prepared to stand and deliver

4    and you don't just come in here and HO human it.

5    That is not right.

6         MR. MOORE:  Yes, Your Honor EUFRPBLT sit

7    insurance are not treated that WAEUFPLT.

8         MR. MOORE:  Yes, Your Honor.

9         MR. COLLINS:  Your Honor, in the meantime can I

10   ask TKOURLT his aunt who resides here in Virginia

11   and Herndon is available to serve as third party

12   custodian for him pending that I would ask The Court

13   to release him to her custody and I could bring her

14   name, forward her name is begin knee SRE TKPWEUB

15   son.  She lives in the Eastern District of extra

16   sand she and her daughter are here they have come

17   down from Herndon she I proffer to The Court their

18   more than happy to serve as third party just

19   custodian both law abiding sits EPBLS no conviction

20   for anything.

21        THE COURT:  There hasn't been any investigation

22   by the probation officer on that has there?

23        MR. MOORE:  No, Your Honor.

24        PROBATION OFFICER:  No, Your Honor.

25        THE COURT:  All right.  Well, I have to say

1    this.  Mr. Ford -- the magistrate judge found that

2    there was sufficient grounds strength of the opinion

3    to impose certain kinds of conditions.  Strength of

4    the evidence.

5         But, we have since had and frankly this is

6    SREPL SORS distressing things that I see here in the

7    record about him driving lamb PWRO gee knee rented

8    out of where was it do you intend to even find out

9    who the many lamb PWRO begin TPHRE was rented to?

10        MR. MOORE:  Yes, Your Honor.

11        THE COURT:  You going to do a loot of homework

12   between now and then ERPBT you?

13        MR. MOORE:  Yes, sir.

14        THE COURT:  You better due it right that is the

15   has chance you have got.

16        MR. MOORE:  Yes, Your Honor.

17        THE COURT:  What is the status of these KARGS

18   up in New York?

19        MR. MOORE:  Your Honor, because Mr. Ford is

20   outside the jurisdiction of New York they have to

21   not writ him over but they have to get jurisdiction

22   over him they just can't I was talking to the A. D.

23   I. yesterday there is a process to go through before

24   they can indict him.

25        THE COURT:  Just that is TKO*US double speak.

1      MR. MOORE:  Not current lip under indictment.

2   They are trying to indict him.

3      THE COURT:  What do they know about what

4   evidence do they have about whether he was driving a

5   stolen car apparently.

6      MR. MOORE:  Yes, Your Honor.

7      THE COURT:  Stolen car had a 357 in it TPHAO

8   Yes, Your Honor EUFRPBLT what evidence will you put

9   on about that?

10      THE COURT:  I but you will find some won't you

11   TPHAO yes -RS Your Honor.

12      THE COURT:  All right.  If you want The Court

13   to exercise its power you better take serious your

14   responsibility to prove things to TKOURLT.

15      MR. MOORE:  Yes, Your Honor.

16      THE COURT:  I don't think it is in the interest

17   of the citizen try to release the defendant pending

18   this further TK-RPL nation.  I don't even have

19   TPHAPB examination PRAP perhaps the probation office

20   can look into those had December would be W-R own of

21   them would be a proper third party custodian and

22   have is a that information STRAEUBL for me on

23   Thursday.

24      MR. COLLINS:  Yes, sir.

25      THE COURT:  I will consider it at that time.

1          MR. COLLINS:  Yes, sir.

2          MR. MOORE:  Yes, Your Honor.

3          THE COURT:  In addition T that, I want the PWRE

4    tile services office to do its own examination I

5    guess this is the done by our offices hire are.

6          MR. COLLINS:  Yes, sir it was.

7          THE COURT:  Because pretrial service's office

8    concluded there were flow conditions of release I

9    believe the last time.  Okay.  All right.  Now, Mr.

10   Moore, you know bet T TER than that I don't ever

11   want there happening.

12         MR. MOORE TWO:  We will be having further

13   discussions on what happened today Your Honor rest

14   assured.

15         THE COURT:  Doesn't do any good to bring

16   witnesses in here who give you I don't knows?

17         MR. MOORE:  Yes, Your Honor.

18         THE COURT:  That is asking a question you are

19   not proving anything and wasted Mr. Barely time what

20   I ought to do is make you pay for his fees that I am

21   going to have to pay.  Because you weren't ready.

22   All right.  We will be in see you on Thursday

23   Mr. Barely.

24         MR. COLLINS:  Thank you sir.

25         THE COURT:  We will be in recess:

1          HEARING ADJOURNED.  THE FOREGOING IS A TRUE AND

2                      CORRECT TRANSCRIPT.

3                  GILBERT FRANK HALASZ, RMR

4                   OFFICIAL COURT REPORTER

5          .  .  .

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25