1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
2                        Richmond Division

3

4          United States of America,

5                                     plaintiff

6                    versus              3:10 CR 151

7          Faye W. Kriete,

8                                     defendant

9

10

11

12

13

14            before:  Honorable Robert E. Payne
              Senior United States District Court Judge
15

16                        Sentencing

17

18                    December 10, 2010
                      Richmond, Virginia
19

20

21

22              GILBERT F. HALASZ RMR
                Official Court Reporter
23              U. S. Courthouse
              701 East Broad Street
24            Richmond, VA 23219
                (804) 916-2248
25

```
 1

 2

 3                      APPEARANCE

 4

 5              Michael Moore, ESQ.,

 6         Assistant United States Attorney

 7               For the United States

 8

 9            Christopher Collins, Esq.

10                for the defendant

11         The defendant in her own behalf

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            THE CLERK:  Case number 3:10 CR 151.

 2            United States OF America versus Faye W. Kriete.

 3            Mr. Michael Moore represents the United States.

 4            Mr. Christopher Collins represents the

 5      defendant.

 6            Are counsel ready?

 7             MR. MOORE:  Ready, Your Honor.

 8            MR. COLLINS:  Ms Kriete is ready.

 9            THE COURT:  Good afternoon.

10             MR. MOORE:  Your Honor, Ms Kriete is before

11      The Court today for sentencing following a June 10

12      guilty plea to a criminal information which charged

13      her with bank fraud, violation of title 18 United

14      States Code section 1344.  The maximum penalty upon

15      conviction for that offense is 30 years

16      imprisonment, five years supervised release, one

17      million dollar fine, and a hundred dollar special

18      assessment.

19            The advisory guideline range is four to ten

20      months.  There are no objections to the presentence

21      report.

22            When we were last before The Court on October

23      1st The Court had indicated it was considering

24      upward departure or variance and directed further

25      briefing, which has been conducted in accordance
```

```
1     with the schedule set by The Court.  Both parties

2     are in agreement that an upward departure is not

3     warranted.

4          THE COURT:  All right.

5          There are no objections to the presentence

6     report, are there?

7          MR. MOORE:  That's correct, Your Honor.

8          MR. COLLINS:  That's correct.

9          THE COURT:  Ms Kriete, I'm not sure whether I

10    went through this with you or not.

11         Stand up, please.  Have you reviewed the

12    presentence report?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Did you understand it?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Have you talked to with Mr. Collins

17    about it?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Are there any objections to it?

20         THE DEFENDANT:  No.

21         THE COURT:  You may be seated.

22         The presentence report will be accepted,

23    adopted and filed as tendered.  It will be placed in

24    the record.  It will be under seal.  It will be

25    available in the event of any appeal except for the
```

1    confidential sentencing recommendation.

2         MR. COLLINS:  If I might, Judge.

3         THE COURT:  Yes.

4         MR. COLLINS:  I want to bring to The Court's

5    attention an error that I made in the brief the

6    Court asked us to file on page --

7         THE COURT:  Which brief?  You all filed the

8    sentencing position, or the --

9         MR. COLLINS:  Yes.

10        THE COURT:  What?

11        MR. COLLINS:  Yes.

12        THE COURT:  Which one, the most recent one or

13   earlier?

14        MR. COLLINS:  Most recent one, Judge.

15        THE COURT:  Let me get that.  Where is it?

16        MR. COLLINS:  Page four.

17        THE COURT:  Page four.

18        MR. COLLINS:  Number three.

19        THE COURT:  All right.

20        Allegation five, et cetera?

21        MR. COLLINS:  Correct.  The bottom half of that

22   I talk about $3,500 refund check that had been sent

23   to Mr. Kriete.  I implied that because she didn't

24   know about it he must have forged her signature.  Ms

25   Kriete quickly pointed out that that was not the

1     case.  That she did not know he had the check.  Had

2     received $715, or $50, for her half of that, but she

3     didn't -- it was not notated that is what it was

4     for, and she did not know.  At a subsequent

5     separation negotiation meeting Mr. Kriete came with

6     the check and she negotiated it.  Any implications I

7     made with regard to his conduct were incorrect in

8     that regard.

9          THE COURT:  All right.

10          Mr. Moore?

11          MR. MOORE:  Does The Court want me to address

12     both the upward departure and issue at sentencing?

13          THE COURT:  Do it all at once.

14          MR. MOORE:  All right.

15          Your Honor, as far as an upward departure goes,

16     I will rely largely on the briefs, the written

17     pleading, that has already been filed.  The

18     government's position is that the guidelines

19     adequately reflect the aggravating aspects of this

20     defendant's conduct.  As I indicate, the government

21     was unable to find any basis for an upward departure

22     or variance here.  I would add that one thing, one

23     thing I should have brought up in the brief that I

24     did not.  One of the principles that underlie the

25     guidelines is to the extent possible like cases

1    ought to be treated alike.  And for that reason the

2    government contends that if this The Court was to

3    impose some sort of variant, it is possible there

4    could be an unwarranted disparity between Ms Kriete

5    and like-situated defendants.

6        THE COURT:  Who are they?

7        MR. MOORE:  Well, there is no distinguishing

8    principle, or no factor that aggravates Ms Kriete's

9    conduct in this case.  From the government's

10   perspective I have been unable to find one.

11   Therefore, my contention is there is significant

12   possibility that sentencing her outside the

13   guidelines could create unwarranted disparity here.

14       THE COURT:  But you don't have any specific

15   comparison.

16       MR. MOORE:  No, Your Honor, I don't.

17       THE COURT:  I didn't see any in the report.

18       MR. MOORE:  No, Your Honor.

19       THE COURT:  All right.

20       MR. MOORE:  As far as sentencing within the

21   guidelines goes, of particular concern to the

22   government is the degree of planning and cunning

23   that was involved in this crime.  And certainly it

24   is not the government's position that the fact that

25   this took place against the back drop of a bitter

1    divorce is any sort of mitigation.

2         The other area of concern that I have is that

3    Ms Kriete, both personally and through counsel, has

4    engaged in lot of statements or made a lot of

5    statements that appear to be minimizing.  That is

6    probably a very charitable way of putting it.  That

7    is a further cause for concern as far as the

8    government is concerned.  So I would ask The Court

9    take all that into account.

10        THE COURT:  What do you think is appropriate

11   sentence?

12        MR. MOORE:  Your Honor, I think a sentence of

13   incarceration within that guideline range is

14   appropriate.

15        THE COURT:  High end or low end --

16        MR. MOORE:  Your Honor --

17        THE COURT:  -- middle, or where?

18        MR. MOORE:  -- given the fact she has no prior

19   criminal record, I would say mid range or the mid

20   point of the guidelines would be appropriate.

21        THE COURT:  All right.

22        MR. MOORE:  I would also ask The Court to

23   impose restrictions on her special condition of

24   supervised release with respect to her employment in

25   terms of not being entrusted with funds or access to

1    other persons financial information.  And also that

2    she be barred from any direct or indirect contact

3    with Mr. Kriete.

4         THE COURT:  How can I do that?

5         MR. MOORE:  I think The Court can impose

6    reasonable restrictions of supervised release.

7         THE COURT:  My question is, why is that a

8    reasonable condition?  Why is it linked to the

9    offense?  Here, you know, the law in the Fourth

10   Circuit is you can impose a special condition.  But

11   the special conditions have been to be reasonably

12   related to the offense of conviction.  And I am not

13   quite sure why that bar fits the bill here.  And so

14   you obviously have a feeling about it, and a reason

15   for it.  I was soliciting your view.  I know I can

16   be done, but the question is, what is the nexus?

17        MR. MOORE:  Nexus would be the back drop

18   behind the case, fact that Mr. Kriete is in fact a

19   victim.

20        THE COURT:  So what does indirect and direct

21   contact mean?

22        MR. MOORE:  Well, indirect contact would be

23   contact through intermediaries or something of that

24   nature, Your Honor.  Direct contact would be --

25        THE COURT:  Do you mean communication?

1          MR. MOORE:  Yes, Your Honor.

2          THE COURT:  Contact has a lot of different

3     meanings.  If they walk out and she says, I am sorry

4     and shakes his hand, that is contact.  Are you

5     intending to bar that?  Or intending to bar

6     communication?

7          MR. MOORE:  Well, I would say communication

8     and contact, Your Honor.

9          THE COURT:  Both.

10          MR. MOORE:  Out of an abundance --

11          MR. COLLINS:  If it helps, we would agree.

12          THE COURT:  To both?

13          MR. COLLINS:  To both.

14          THE COURT:  All right.  I just needed to know

15     what he wanted.

16          MR. MOORE:  Yes, Your Honor.

17          MR. COLLINS:  Judge, I am not going to belabor

18     the point.  In fact, I had some concern that my last

19     position paper might have been offensive to The

20     Court.  I apologize if it was in any regard.  I did

21     not mean it to be.

22          THE COURT:  I didn't take anything personal

23     with it if it was.  It was, I thought that it was

24     minimizing something that couldn't be minimized,

25     though I thought it was wrong.  But that is

1       different than taking offense at it.

2            MR. COLLINS:  That is my fault, not hers.

3            My point was, I know The Court was concerned,

4       was concerned about allegations that were just that.

5       They are bare allegations.  There was no evidence to

6       support any of them.  The police have looked into

7       all of these complaints, and they found nothing

8       there.  So, while I will tell The Court my original

9       conversations with the government were that home

10      incarceration would be appropriate, I think that

11      train left the station.  If The Court finds it

12      necessary to incarcerate Mrs. Kriete, I ask that at

13      least a portion of that she be allowed to do on home

14      incarceration.  And that she be given a reporting

15      date.

16           Thank you.

17           THE COURT:  Mr. Moore, a moment ago when

18      Mr. Collins was speaking, the gentlemen in the back

19      there raised his hand.  That is Mr. Kriete; is it

20      not?

21            MR. MOORE:  That is, Your Honor.

22           THE COURT:  All right.

23           Does he wish to make a statement, or what was

24      the situation?

25            MR. MOORE:  I will check with him.  I

1   assumed --

2        THE COURT:  Why don't you go do that?

3         MR. MOORE:  Yes, sir.

4        MR. KREITE:  Yes, I care to speak.

5         MR. MOORE:  He wishes to add to his comment.

6        THE COURT:  Come to the lectern, please, so I

7   can hear what you have to say.

8        MR. KREITE:  Your Honor, back on October 1st

9   when we were in this court I explained some things

10  to you about the situation and accusations that I

11  have made.  I have documentation to prove every bit

12  of it.  I just been denied that from the law

13  enforcement.  I have been to -- Hanover County has

14  been doing this to me.  I have filed a complaint

15  against Hanover County for police misconduct.  And

16  hopefully that is on-going.

17       I have been to the state police with the same

18  story.  And I have facts and evidence to prove every

19  bit of it.  It is not a fact or some kind of

20  fictional thing.  It is real, it is criminal, it

21  happened.  If someone -- I have a private

22  investigator report, background check, and it tells

23  the whole story if anybody would look at it.  It

24  probably, the private investigator that did the

25  check did not have access to the data bases that the

1    police have.  So her background check shows what she

2    is, what she has done, and that she has been doing

3    for the last 20 years.  I have also done some

4    private investigating work on my own, and I am still

5    actually pursuing that to try to find out what the

6    hang up is on justice in this matter.  I have a lot

7    of evidence that needs to be investigated.

8         She was originally charged with three crimes;

9    two of those crimes were dismissed or dropped to get

10   this guilty plea on one count.

11        There are three other.  There is another count

12   of bank fraud.  There is a count of check fraud.

13   And there is a count of forgery of a notary public's

14   signature, as well as mine, and both witnesses.  I

15   have taken that to the Richmond police.  They told

16   me they can't prove that that happened in Richmond,

17   so I would have to take it to Hanover.  I have done

18   that.  And every time I go to Hanover I make sure I

19   have a witness with me.  I have never got as much as

20   a return phone call.  In fact, the investigator

21   there told me, why don't you get Postal Inspector

22   O'Donnell to check on this.  Postal Ed O'Donnell did

23   a brilliant job.  He is the only man in law

24   enforcement that I have met or talked to yet that

25   was willing to do his job.  That is why we are here

```
1      today.  There is the tip of the iceberg.  This
2      charge today is just the tip of the iceberg.  There
3      is much more.  There is also another victim involved
4      here --
5            THE COURT:  Who is that?
6            MR. KREITE:  -- nobody wants too hear about
7      either.
8            THE COURT:  Who is that?
9            MR. KREITE:  Her aunt.
10           THE COURT:  Who?
11           MR. KREITE:  Betsy Askew.  She is recently
12     deceased.  Their family will tell you the same thing
13     I just told you if somebody wanted to investigate
14     and find out what this case is really about.
15           I just lost my attorney.  He bailed out on me
16     yesterday.  So I no longer have an attorney.  I have
17     to scramble.  Legal fees are about to kill me, you
18     know.
19           I have suffered tremendously from this crime.
20     My credit was destroyed for four years.  It is now
21     being repaired.  I have two liens from the IRS right
22     now, and I am living in a 30-foot trailer, camp
23     trailer.  Just about bankrupt because of this.  And
24     there other crimes that still need to be
25     investigated.  So I tried to be brief on
```

```
 1    October 1st and just kind of -- but I am going

 2    into more detail today, I understand that.  But

 3    these are facts that need to be known.

 4        This charge that we are dealing with today is

 5    just one of many.  So, I asked you for an

 6    investigation.  You said you could not do that for

 7    me.  So I am asking someone to give me -- all

 8    respect to the postal inspector, he did a great

 9    job -- but the other law enforcement agencies in the

10    State of Virginia and in Hanover County in

11    particular, have almost damaged me as much as the

12    crimes that have been committed.

13        Stress, suffering, loss, I have had to sell

14    just about everything that I worked for my entire

15    life to keep a house from going into foreclosure and

16    keep from losing everything.  My credit was already

17    destroyed by credit card fraud, the identity theft,

18    and the postal fraud.  So, I mean, the facts on that

19    the credit card statements were actually re-directed

20    to her P. O. box and completely out of my control

21    after the crime was committed.  That was the postal

22    fraud.  That is the postal fraud.  But apparently

23    that has been dismissed.  I am not sure why.  But

24    there is a lot more to this case, Your Honor.

25        THE COURT:  You mean the United States
```

1     Attorney's Office didn't talk to you before they

2     accepted the plea?

3          MR. KREITE:  They told me they could not talk

4     to me.  It was United States case against Faye

5     Kriete.

6          I talked to --

7          THE DEFENDANT:  Wait a minute.  Wait a minute.

8     Wait just a minute.  You were told by the United

9     States Attorney's office that the office couldn't

10    talk to you before they accepted a plea of guilty in

11    this case?

12         MR. KREITE:  Yes, sir.

13         THE COURT:  How about afterwards?

14         MR. KREITE:  They only communicated with me

15    through my attorney, who I just lost yesterday.

16         THE COURT:  Weren't they -- were they telling

17    you they couldn't talk to you, or they couldn't talk

18    to you -- wait a minute and listen -- except through

19    the lawyer?

20         MR. KREITE:  That is right, Your Honor.

21         THE COURT:  Which?

22         MR. KREITE:  Only talk to me through my

23    attorney.

24         THE COURT:  Did the U.S. Attorney, Mr. Moore,

25    did he talk to your attorney?

1        MR. KREITE:  But he didn't tell me word for

2    word the conversation.  Probably should have been a

3    three-way call, probably.

4        THE COURT:  That is really between -- it may

5    have been, but that was up to your lawyer to arrange

6    for it.  If he didn't do it, that is not Mr. Moore's

7    fault.  Mr. Moore has a legal obligation and ethical

8    obligation to be careful to communicate with people

9    who are represented in matters where the United

10   States might have a position different than yours

11   only through a lawyer if you are represented.

12       MR. KREITE:  I was, but I am no longer

13   represented.

14       THE COURT:  We are at the point now -- I

15   understand that he didn't do anything wrong that I

16   can tell by communicating with your lawyer.  Now,

17   whether your lawyer should have hooked you into a

18   telephone call was a different matter.  That is

19   something you need to take up with your former

20   lawyer.  Who was that.

21       MR. KREITE:  Mr. Jennings, Grant Jennings.

22   That is why he dropped me as a client, because I had

23   to file a complaint against him with the bar.  I

24   should have waited until after today, possibly.  But

25   he was not communicating with me.  I was calling.

1    He was telling me he was doing this and he wanted a

2    phone number, and he was going to take some sworn

3    statements from some people.  And that wasn't done.

4    And I called on numerous occasions.  In fact, I was

5    talking to an attorney in Petersburg to handle the

6    credit card company for me.  And he said, well,

7    please call me back and let me know how that goes.

8    He says, please.  I called him three times that day

9    without a response.  And then I did get a quick

10   phone call saying he was going to work Saturday and

11   call me Saturday, I will have plenty of time to talk

12   to you.  I got voice mail both times.  So I got to

13   the point where I was not -- even my lawyer was

14   ignoring me.  I have been ignored by the Hanover

15   Sheriff's Department.  I have been ignored by the

16   state police.  The only person that did not was

17   Postal Inspector O'Donnell, and I praise that man.

18   He did a good job, and he found all three counts

19   that he investigated.  He did not go any further and

20   told me he would not go any further.  Then one of

21   the three charges that were filed --

22        THE COURT:  All right.  Thank you, sir.

23        MR. MOORE:  Before we go any further, I want

24   to make sure one thing is very clear for the record.

25   Before Ms Kriete was ever charged, and before any of

1       his, Mr. Kriete's, rights under the victim rights

2       act would have been triggered, myself and Mrs.

3       Olman sat down with him and his attorney at the U.S.

4       Attorney's office.  We had a very lengthy meeting

5       with him in which I spelled out for him and his

6       attorney precisely what we were doing in this case,

7       and why we were doing it.

8            Now, I also explained to Mr. Kriete at that

9       time that neither myself nor Ms Olman could contact

10      him directly for the ethical reasons, my obligation

11      as an attorney in dealing with represented parties

12      baring me from dealing with represented parties.

13      Thereafter, and if Mr. Jennings were here he would

14      certainly confirm this, I had regular contact with

15      Mr. Jennings to update him about what was going on

16      with this case.  I answered every question he had.

17      And he was certainly satisfied with the U.S.

18      Attorney's Office's efforts on behalf of Mr. Kriete.

19           THE COURT:  All right.

20           Do you have anything to say?

21           MR. COLLINS:  Well, I do, Judge.  I will try to

22      keep it brief and try to keep it simple.  I don't

23      doubt that this gentlemen has had an awful lot of

24      expenses.  He started out with Mr. Beyer as his

25      divorce lawyer.  You probably can't get more

1    expensive than that.  They came to a separation

2    agreement.  He hired Mr. Jennings to undo the

3    agreement.  So they have been over it a couple

4    times.

5         Mr. Gainey is here and would be happy to tell

6    you that almost all --

7         THE COURT:  Who is Mr. Gainey?

8         MR. COLLINS:  Mr. Gainey is an attorney in

9    Hanover.

10        THE COURT:  I know that, but, I mean, what is

11   his role?

12        MR. COLLINS:  He was Ms Kriete's divorce

13   lawyer.  And all of these things have been

14   negotiated in the separation agreement.

15        Typical of Mr. Kriete, since we have been in

16   this proceeding is him telling The Court -- he

17   didn't equivocate -- he told The Court the U.S.

18   Attorney's office didn't discuss it with him.  When

19   The Court pushes, they had in fact discussed it with

20   him and through his attorney.

21        That is all i have.

22        THE COURT:  All right.

23        Ms Kriete, do you have anything to say before

24   sentence is imposed?  If you do you can come to the

25   lectern, and I will hear what you have to say.

1               THE DEFENDANT:  No, sir.

2               THE COURT:  All right.

3               All right.

4               Well, I have considered this case at some

5       considerable length twice now.

6               And, in fact, gave the parties an opportunity

7       to agree to the basic issues that were raised by

8       Mr. Kriete and to look into what he said at the

9       October 1 sentencing session.  And I delayed the

10      sentencing in order to do that.

11              And therefore -- and I have considered the

12      positions of the parties.  I have also considered

13      what Mr. Kriete had to say.  It is the job of The

14      Court to sentence the defendant for the charges that

15      have been, of which she has been convicted.  It

16      isn't the job of The Court to conduct investigations

17      or to take allegations that haven't been proven into

18      account at the sentencing.  The United States has

19      considered these charges itself, and has concluded

20      that on the basis of information known by Mr. Kriete

21      that there is no basis for an upward variance

22      notwithstanding that The Court indicated that it

23      would consider one.

24              I believe that United States does not take

25      lightly a requirement of The Court to supplementally

1     brief the issues that were addressed.

2         Mr. Collins on behalf of Ms Kriete has in fact

3     addressed a number of the issues.

4         What has been done or not done by the state

5     authorities is beyond the province of the federal

6     courts to deal with.  That just is something that in

7     our system of government the federal courts are

8     obligated to stay away from.

9         Having considered the offense conduct here and

10    the charges under 18 U.S.C. section 3553(a), and

11    having considered the guidelines as advisory, and

12    viewing this offense as extremely serious, it is the

13    judgment of The Court that the defendant, Faye W.

14    Kriete, is hereby committed to the custody of the

15    United States Bureau of Prisons for a term of ten

16    months.  Upon release from imprisonment she shall be

17    placed on supervised release for a term of five

18    years.  Within 72 hours of release from custody from

19    the Bureau of Prisons she shall report in person to

20    the probation office in the district to which he is

21    released.  While on supervised release she shall not

22    commit any federal, state or local crimes, she shall

23    not unlawfully possess a controlled substance, and

24    shall not process a firearm or destructive device.

25    There is a low risk of future substance abuse, so

1     the mandatory testing conditions are waived, but

2     that doesn't preclude the probation officer from

3     administering drug tests as deemed appropriate.

4          She shall comply with the standard conditions

5     of supervised release with the following special

6     conditions:

7          One, she shall participate in a program

8     approved by the probation officer for mental health

9     treatment, cost to be paid by the defendant as

10    directed by the probation officer.

11         Two, she shall not incur new credit charges or

12    open additional lines of credit without the approval

13    of the probation officer.

14         Three, she shall provide the probation officer

15    access to requested financial information.

16         Four, she shall participate in a program

17    approved by the probation office for financial

18    counseling, cost to be paid by the defendant as

19    directed by the probation officer.

20         Five, she shall apply all monies received from

21    income tax refunds, lottery winnings, inheritances,

22    judgments, and any anticipated or unexpected

23    financial gain to the outstanding court-ordered

24    financial obligation or lesser amount to be

25    determined by The Court upon recommendation of the

1      probation officer.

2          Six, the defendant is prohibited from engaging

3      in any aspect of the banking business, or in a

4      similar occupation where the defendant would have

5      access to the money of others.

6          Seven, the defendant is barred from having

7      contact with or communication with Mr. Kriete,

8      either directly or indirectly, or being within

9      500 yards of his person.

10         Considering all the financial factors and the

11     need for restitution the defendant is not capable of

12     paying a fine, but she is capable of making

13     mandatory restitution.  Payments as to count one she

14     shall pay a special assessment in the amount of a

15     hundred dollars, which is due in full and payable

16     immediately.  She shall make restitution to Chase

17     Manhattan Bank in the amount of $15,075.  Special

18     assessment and restitution shall be payable in full,

19     payable immediately, and payable in prison.  Any

20     balance remaining unpaid on the special assessment

21     and restitution at the beginning of supervision

22     shall be paid by the defendant in installments of

23     not less than $250 per month, or 25 percent of the

24     defendant's gross income, whichever is greater; the

25     Court finding that she is capable of making and

1     earning that money sufficient to make those

2     payments.  Payments will begin 60 days after

3     supervision begins, and payment of any unpaid

4     balance shall become a special condition of

5     supervised release.

6          Is there a forfeiture?

7          MR. MOORE:  No, Your Honor.

8          THE COURT:  What is the position of the United

9     States on home confinement for any part of the

10    ten-month sentence?

11         MR. MOORE:  I would submit that given the

12    aggravating factors that home confinement is not

13    appropriate.

14         THE COURT:  What is the position of the United

15    States on self-surrender?

16         MR. MOORE:  The government has no objection.

17         THE COURT:  I am inclined to remand her

18    immediately.

19         MR. MOORE:  Pardon me?

20         THE COURT:  I am inclined to remand her

21    immediately.  If she surrenders, it will be

22    surrender that occurs within a very short period of

23    time.

24         MR. MOORE:  I have no objection to allowing

25    her to remain out through Christmas and remand after

1    the first of the year.

2         THE COURT:  I think she needs to be

3    incarcerated at Christmas.  I understand what it

4    means to have that kind of situation in your life.

5         MR. MOORE:  Then there is really no point in

6    allowing self surrender, Your Honor.  She might as

7    well --

8         THE COURT:  I don't know if she needs to get

9    her act together.

10        MR. COLLINS:  Certainly she has some of that to

11   get together, Judge.  I would ask for a

12   self-reporting date.  I would also ask The Court to

13   consider home incarceration for part of that

14   sentence.  I am a little surprised at the

15   government's 180-degree change in position.  The

16   facts haven't changed.  And he at one point would

17   not have objected to home incarceration for the

18   entirety of the sentence.  So I would ask The Court

19   to consider this.  This is a 65-year-old woman.

20   Never been in trouble.  Any time she does in jail

21   will be shockingly effective.

22        THE COURT:  Yes, I am sure it is.  I am not

23   going to grant the request for home confinement.  I

24   don't think it is appropriate.  The defendant shall

25   surrender for service of sentence at the institution

```
1      designated by the Bureau of Prisons before 2:00 p.m.

2      on -- what is this Tuesday?  What is the date?

3      12th?  No.  Fourteenth.  The 14$^{th}$ of December,

4      2010 at the facility notified by the Marshals.  It

5      is the responsibility of the defendant to know the

6      place of incarceration and to get herself there.  If

7      she can't get there, or there has been no

8      notification, she is to surrender before 2:00 p.m.

9      to the Marshal in this building.

10          Is there anything else that needs to be done in

11     this case?

12          MR. COLLINS:  No.

13           MR. MOORE:  No, Your Honor.

14          THE COURT:  Ms Kriete, I am not suggesting that

15     there is reason for appeal or right of appeal, but

16     any appeal that is to be taken must be taken by

17     filing a written notice of appeal within 14 days of

18     this date of the judgment of The Court.  If that is

19     not done by filing with the clerk in writing in that

20     period of time, then whatever right of appeal may

21     exist is lost forever.  Do you understand what I

22     said?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Mr. Collins, are you retained?

25          MR. COLLINS:  Yes.
```

1          THE COURT:  Your responsibilities include

2     timely filing a notice of appeal if one is to be

3     filed.  Again I am not suggestion one is available

4     or appropriate, and that does not obligate you to

5     handle the matter beyond that which you have agreed

6     to handle with your client.

7          MR. COLLINS:  I understand.

8          THE COURT:  Ms Kriete, I think the sentence is

9     necessary to deter you from future conduct, to

10    instill in you respect for the law, to protect the

11    public from any further activities of the kind

12    described in the offense conduct in the presentence

13    report.

14         The Court wishes us you well in the service of

15    your sentence.  I specifically believe that it is

16    imperative that you serve part of your time over

17    Christmas holidays simply so you will have impressed

18    upon you what it is ever to commit a crime again.

19    With the hope that no one will ever -- no court will

20    ever see you again.  Your job is to report on

21    Tuesday to the Marshal's office here if they haven't

22    given you a reporting time.  Do you understand that?

23         THE DEFENDANT:  Yes, sir, Your Honor.

24         THE COURT:  If you don't do that, that is a

25    separate offense for which you can be prosecuted and

1    severely punished if convicted.

2         The Court wishes you well in the service of

3    your sentence and rehabilitation of your life.

4         Anything else that needs to be done?

5         MR. MOORE:  No, sir.

6         MR. COLLINS:  No, Your Honor.

7         THE COURT:  Is the other case ready?

8         THE DEFENDANT:  Brief recess, Your Honor.

9         THE COURT:  Take a brief recess.

10                   HEARING ADJOURNED.

11

12         THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT.

13

14                   GILBERT FRANK HALASZ, RMR

15                    OFFICIAL COURT REPORTER

16

17

18

19

20

21

22

23

24

25